# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

TERRON MILLET,                              )
                                            )
               Petitioner,             )
                                            )
v.                                          )         No. 4:20-CV-539 RLW
                                            )
RICHARD ADAMS,[1]                           )
                                            )
               Respondent.             )

## <u>MEMORANDUM AND ORDER</u>

This matter is before the Court on Petitioner Terronn Millett's pro se Petition (ECF No. 1) and Amended Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (ECF No. 7), filed by retained counsel.[2] Petitioner is incarcerated at the Eastern Reception, Diagnostic and Correctional Center ("ERDCC"). For the following reasons, the Court will deny habeas relief.

### Procedural History

On June 12, 2013, Petitioner was found guilty of first-degree murder and armed criminal action following a bench trial in the Circuit Court of St. Louis County, State of Missouri. See State v. Millett, No. 1222-CR00548 (22nd Jud. Cir., State of Mo.). The trial court sentenced Millett on

---

[1]Richard Adams is the current Warden of the Eastern Reception, Diagnostic and Correctional Center where Petitioner is incarcerated.  Under Rule 2(a) of the Rules Governing Section 2254 Cases in the United States District Courts, "the petition must name as respondent the state officer who has custody." Therefore, Richard Adams's name will be substituted as the named Respondent in this action pursuant to Rule 25(d), Fed. R. Civ. P.

[2]Petitioner's name is generally spelled "Terron Millett" in the record of the underlying case, but is spelled two different ways on his pro se Petition ("Terron Millet" in the caption and "Terronn Millett" in the signature block) (ECF No. 1 at 1, 2). The Amended Petition (ECF No. 7) filed by counsel states that "Terronn Millett") is the correct spelling of Petitioner's name. The Court will use the spelling represented by counsel to be correct in this Memorandum and Order but will not change the case caption, as that spelling was used by Petitioner in the caption of his pro se case § 2254 Petition.

June 12, 2013. (Resp. Ex. B, ECF No. 10-2 at 28-30.) Petitioner timely appealed. (Resp. Ex. B at 37-38.) The Missouri Court of Appeals affirmed Millett's conviction on August 19, 2014. <u>See State v. Millett</u>, 447 S.W.3d 713 (Mo. Ct. App. 2018) (Resp. Ex. E, ECF No. 10-5 at 1-8.) Petitioner sought rehearing or transfer to the Missouri Supreme Court, which the court of appeals denied on September 22, 2014. (<u>Id.</u> at 9-13.) Millett then filed in the Missouri Supreme Court seeking rehearing or transfer, was denied on November 25, 2014. (<u>Id.</u> at 14-22.)

On October 29, 2014, Millett filed a premature pro se post-conviction motion under Missouri Supreme Court Rule 29.15. (Resp. Ex. F, ECF No. 10-6 at 15.) Retained counsel filed a timely amended motion on March 2, 2015. The post-conviction motion court denied Millett's amended 29.15 motion on February 15, 2018. (<u>Id.</u> at 73-80.) Millett timely appealed. (<u>Id.</u> at 83-85.) The Missouri Court of Appeals denied the appeal on May 14, 2019. <u>See Millett v. State</u>, 579 S.W.3d 268 (Mo. Ct. App. 2019) (Resp. Ex. I, ECF No. 10-9 at 1-15.) Millett sought rehearing or, in the alternative, transfer to the Missouri Supreme Court, which the Court of Appeals denied on June 17, 2019. (<u>Id.</u> at 16-23.) Millett then filed in the Missouri Supreme Court seeking rehearing or transfer, which that court denied on September 3, 2019. (<u>Id.</u> at 24-37). The Missouri Court of Appeals issued its mandate on September 5, 2019. (<u>Id.</u> at 38–39.)

### § 2254 Petitions and Grounds Raised

Millett filed what the Court construed as his pro se § 2254 Petition before this Court on March 31, 2020. The pro se Petition was titled "Motion in Letter" and stated as follows:

> Dear Clerk of Court,
>
> At this time, I wish to file a "Protective" federal habeas petition and ask the Court to stay the federal 2254 habeas action until conclusion of State post-conviction relief proceedings to protect myself by filing the timely federal habeas petition.

> The petitioner['s] deadline has not yet been reached but very soon it rapidly approaches and the petitioner must present several claims to the state court to avoid the procedural default defense then return to this court to amend this action in good faith.
>
> The petitioner's counsel of record in all state procedures failing him and were constitutionally ineffective in the assistance of counsel to the 5th, 6th, and 14th amendment to the United States constitution resulted in the Fundamental Miscarriage of Justice and/or incarceration of an Actual innocence person with an unlawful restraint upon his body and liberty.
>
> Wherefore, in the interest of justice petitioner request this court to file a "Protective["] federal 2254 habeas corpus petition and grant the request to stay the habeas action until conclusion of the state post-conviction relief proceedings.

(ECF No. 1 at 1-2.)

On July 30, 2020, the Court issued an Order stating it construed Millett's filing as a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 that was not filed on a Court form. The Court noted that Millett had not paid the filing fee or filed a motion for leave to proceed in forma pauperis. The Court ordered Millett to file an amended petition on a Court form and file either a motion for leave to proceed in forma pauperis or pay the filing fee, within 30 days, or the case would be dismissed without prejudice. (ECF No. 2.)

On August 25, 2020, retained counsel entered an appearance for Millett and moved for an extension of time to September 4, 2020, to file an amended petition and pay the filing fee. (ECF Nos. 3, 4.) The Court granted this motion and the Amended Petition was filed on September 4, 2020.

The Amended Petition raises the following grounds:

Ground One: Mr. Millett was denied his rights to due process of law, a fundamentally fair trial, and proof beyond a reasonable doubt under the Fifth and Fourteenth Amendments to the United States Constitution when the trial court overruled his motions for judgment of acquittal because the State failed to establish beyond a reasonable doubt that he did not act in lawful self-defense in shooting the victim.

Ground Two: Mr. Millett was denied effective assistance of counsel under the Sixth and Fourteenth Amendments of the United States Constitution when trial counsel failed to obtain Mr. Millett's informed consent before waiving a jury trial.

Ground Three: Mr. Millett was denied effective assistance of counsel under the Sixth and Fourteenth Amendments of the United States Constitution when trial counsel failed to object to thirteen portions of testimony during Mr. Millett's cross-examination by the prosecutor.

Ground Four: Mr. Millett was denied effective assistance of counsel under the Sixth and Fourteenth Amendments of the United States Constitution when trial counsel failed to object to the trial court entering sentence on his first-degree murder charge as an unclassified felony.

Ground Five: Mr. Millett was denied effective assistance of counsel under the Sixth and Fourteenth Amendments of the United States Constitution when trial counsel failed to inform him of the state's plea offer of fifteen years for second degree murder.

(ECF No. 7 at 6, 9, 12, 18, 19.)

## Factual Background

The Missouri Court of Appeals described the facts of Petitioner's criminal case as follows:

In June 2011, police officers responded to a reported shooting at a gas station. Upon arrival, the police officers reviewed the gas station's security camera recordings. The security footage showed Victim standing by a gas pump when Millett walked up to Victim, drew a nine-millimeter handgun, and repeatedly shot Victim. Victim fell to the pavement. Millett continued to fire and then immediately drove away from the crime scene. Victim suffered eight gunshot wounds, one of which proved fatal. The police officers recovered twelve spent nine-millimeter casings from the scene. The State arrested Millett and charged him with first-degree murder and armed criminal action.
        . . .
At trial, the State offered into evidence the gas station's security footage. Millett argued that he acted in self-defense when he shot Victim. Specifically, Millett claimed that, a few days prior to the shooting, Victim had robbed him and brandished a weapon during a drug sale. Millett testified that he did not leave when he noticed Victim's vehicle at the gas station because he "wanted to squash [their] problems. [He] wanted to confront [Victim] about the robbery[.]" Millett explained that he carried the gun only to "be prepared[.]" Millett stated that he saw Victim reach towards his waist and thought Victim was reaching for a gun. Millett fired his handgun twelve times, in quick succession.

(Resp. Ex. I, ECF No. 10-9 at 2, 3-4).

**Legal Standard**

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), federal courts review state court decisions under a deferential standard. Owens v. Dormire, 198 F.3d 679, 681 (8th Cir. 1999). Federal habeas relief is available to a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); Williams-Bey v. Trickey, 894 F.2d 314, 317 (8th Cir. 1990) (citing § 2254(a)).

To obtain federal habeas review of a claim raised in a § 2254 petition, the petitioner must have first raised the federal constitutional dimensions of the claim in State court in accordance with State procedural rules. Duncan v. Henry, 513 U.S. 364 (1995) (per curiam); Beaulieu v. Minnesota, 583 F.3d 570, 573 (8th Cir. 2009) (quoted case omitted). In Missouri, "a claim must be presented 'at each step of the judicial process' in order to avoid procedural default." Jolly v. Gammon, 28 F.3d 51, 53 (8th Cir. 1994) (quoting Benson v. State, 611 S.W.2d 538, 541 (Mo. Ct. App. 1980)). If the petitioner failed to properly present the claim in State court, and no adequate non-futile remedy is currently available by which he may bring the claim in that forum, the claim is deemed procedurally defaulted and cannot be reviewed by the federal habeas court "unless the [petitioner] can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 750 (1991); see also Martinez v. Ryan, 566 U.S. 1, 10-11 (2012).

Where the State court adjudicated a claim on the merits, federal habeas relief can be granted on the claim only if the State court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1); or "was based on an unreasonable

determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2). <u>See</u> <u>Williams v. Taylor</u>, 529 U.S. 362, 379 (2000). The federal law must be clearly established at the time the petitioner's State conviction became final, and the source of doctrine for such law is limited to the United States Supreme Court. <u>Id.</u> at 380-83.

"A state court decision is 'contrary to' clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court confronts facts that are materially indistinguishable from relevant Supreme Court precedent yet reaches the opposite result." <u>Zornes v. Bolin</u>, 37 F.4th 1411, 1414 (8th Cir. 2022) (quoting <u>Williams</u>, 529 U.S. at 405-06). "A decision involves an 'unreasonable application of' federal law if the state court 'correctly identifies the governing legal standard but either unreasonably applies it to the facts of the particular case or unreasonably extends or refuses to extend the legal standard to a new context.'" <u>Id.</u> at 1414-15 (quoting <u>Munt v. Grandlienard</u>, 829 F.3d 610, 614 (8th Cir. 2016)). "To demonstrate an unreasonable application, a prisoner must show 'that a state court's adjudication was not only wrong, but also objectively unreasonable, such that "fairminded jurists" could not disagree about the proper resolution.'" <u>Id.</u> at 1415 (quoting <u>Smith v. Titus</u>, 958 F.3d 687, 691 (8th Cir. 2020)). Federal habeas courts "evaluate the reasonableness of the state court's ultimate conclusion, not necessarily the reasoning used to justify the decision." <u>Id.</u> (citing <u>Dansby v. Hobbs</u>, 766 F.3d 809, 830 (8th Cir. 2014)).

Finally, when reviewing whether a State court decision involves an "unreasonable determination of the facts" in light of the evidence presented in the State court proceedings, State court findings of basic, primary, or historical facts are presumed correct unless the petitioner rebuts the presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1); <u>Rice v. Collins</u>, 546 U.S. 333, 338-39 (2006); <u>Collier v. Norris</u>, 485 F.3d 415, 423 (8th Cir. 2007). Erroneous findings

of fact do not automatically require the grant of habeas relief, however. Instead, the determination of these facts must be unreasonable in light of the evidence of record. Collier, 485 F.3d at 423; Weaver v. Bowersox, 241 F.3d 1024, 1030 (8th Cir. 2001).

Federal courts are "bound by the AEDPA to exercise only limited and deferential review of underlying State court decisions." Lomholt v. Iowa, 327 F.3d 748, 751 (8th Cir. 2003). "To obtain habeas relief from a federal court, a state prisoner must show that the challenged state-court ruling rested on 'an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" Metrish v. Lancaster, 569 U.S. 351, 358 (2013) (quoting Harrington v. Richter, 562 U.S. 86, 103 (2011)). This standard is "difficult to meet." Id. "The writ of habeas corpus is an 'extraordinary remedy' that guards only against 'extreme malfunctions in the state criminal justice systems.'" Shinn v. Ramirez, 142 S. Ct. 1718, 1731 (2022) (quoting Harrington, 562 U.S. at 102).

**Evidentiary Hearing**

A district court may dismiss a habeas petitioner's motion without an evidentiary hearing if "(1) the movant's allegations, accepted as true, would not entitle the movant to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." Buster v. United States, 447 F.3d 1130, 1132 (8th Cir. 2006) (internal quotation marks omitted) (quoting Sanders v. United States, 341 F.3d 720, 722 (8th Cir. 2003)). Because the Court determines that Petitioner's exhausted claims do not warrant habeas relief on their face, and that Petitioner is not entitled to a hearing on his unexhausted claims, it will deny the Petition without an evidentiary hearing.

**Discussion**

A.  The Amended Petition is Timely

State prisoners can only file for federal habeas relief within one year of completing state review. 28 U.S.C. § 2244(d)(1). The statute of limitations begins to run on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). However, "the time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation[.]" 28 U.S.C. § 2244(d)(2). Under Payne v. Kemna, 441 F.3d 570, 572 (8th Cir. 2006), the tolling continued until the Missouri Court of Appeals issued its mandate in Millett's state post-conviction appeal on September 5, 2019. This started the statute of limitations running one day later. See id. (under Missouri state court procedures, post-conviction relief proceedings are not final until the appellate court's mandate is issued); King v. Hobbs, 666 F.3d 1132, 1136 (8th Cir. 2012) (the AEDPA's statute of limitations starts to run the day after the event that triggers the time period, citing Fed. R. Civ. P. 6(a)(1)(A); Moore v. United States, 173 F.3d 1131, 1133-35 (8th Cir. 1999)).

Respondent argues that Payne v. Kemna "does not accurately describe Missouri procedure governing when a post-conviction appeal has reached completion." (ECF No. 10 at 6.) Respondent contends that Millett's conviction became final under Missouri law for purposes of federal habeas review on September 4, 2019, and thus the Amended Petition was filed one day late.[3] This Court

---

[3]Respondent also argues that the Amended Petition does not "relate back" to the pro se § 2254 Petition under Federal Rule of Civil Procedure 15(c)(1)(B) and Mayle v. Felix, 545 U.S. 644, 664 (2005), because the pro se filing did not set forth any grounds or claims for relief to which the Amended Petition could relate back. While this argument may have had merit if the Amended Petition were untimely, the point is moot because the Amended Petition was timely filed.

is bound by <u>Payne</u> as controlling Eight Circuit precedent. It therefore rejects Respondent's argument and concludes Millett's Amended Petition was timely filed.

    B.  <u>Exhausted Grounds</u>

        *1. Ground One – Trial Court Error, Denial of Motion for Judgment of Acquittal*

In Ground One, Petitioner contends the trial court erred by overruling his motions for judgment of acquittal because the State failed to establish beyond a reasonable doubt that he did not act in lawful self-defense in shooting the victim.

The Missouri Court of Appeals identified and discussed the law and applied it to the facts relevant to this claim on direct appeal as follows:

> In his second point, the defendant claims the trial court erred in overruling his motions for judgment of acquittal because the State failed to establish beyond a reasonable doubt that he did not act in lawful self-defense in shooting the victim. To support his claim of self-defense, the defendant points to his testimony wherein he stated that he saw the victim reach for something in his, the victim's, waistband, and that the victim had robbed him three days before the shooting.

> In a court-tried case, we review the ruling on a motion for judgment of acquittal to determine whether there was sufficient evidence from which the trial court could have found the defendant guilty beyond a reasonable doubt. <u>Henderson</u>, 311 S.W.3d at 413. We accept as true all evidence tending to prove guilt along with all reasonable inferences supporting that finding, and we ignore all contrary evidence and inferences. <u>Id.</u> We defer to the trial court, and we do not weigh the evidence or decide the credibility of the witnesses. <u>Id.</u>

> A person may, subject to certain limitations, use physical force upon another person when and to the extent he reasonably believes necessary to defend himself or a third person from what he reasonably believes to be the use or imminent use of unlawful force. Section 563.031.1 RSMo. (Supp. 2013). A person may not use deadly force unless, among other limitations not relevant to this appeal, he reasonably believes that such deadly force is necessary to protect himself or another against death, serious physical injury, or any forcible felony. Section 563.031.2.

> A claim of self-defense to justify killing another person requires four elements: (1) an absence of aggression or provocation on the part of the defender; (2) a real or apparently real necessity for the defender to kill the aggressor to save himself from an immediate danger of serious bodily injury or death at the hands of the aggressor; (3) a reasonable cause for the defender's belief in such necessity; and

(4) an attempt by the defender to do all within his power consistent with safely avoiding the danger and the need to take a life. State v. Drisdel, 417 S.W.3d 773, 784 (Mo. App. E.D. 2013); Henderson, 311 S.W.3d at 414. "A person is entitled to acquittal as a matter of law on the basis of self-defense only if there is undisputed and uncontradicted evidence clearly establishing self-defense." Id. (quoting State v. Dulaney, 989 S.W.2d 648, 651 (Mo. App. W.D. 1999)).

Here, the evidence adduced at trial did not support a self-defense theory. The testimony and video revealed the defendant inside the convenience store speaking with the clerk. The defendant exited the store and walked to his right to a car parked at the far end of the parking lot. He retrieved a gun from the car, placed it under his shirt, and returned to where the victim was standing at the gas pumps near the center of the lot, in front of the store entrance.

The defendant approached the victim and fired multiple times. Allen Gregory testified that the victim was talking on his cell phone when the defendant began shooting, and the victim then dropped his phone. Mr. Gregory stated that he did not see the victim reach for anything. The victim ran, and the defendant pursued him while continuing to fire repeatedly. The victim fell to the ground and struggled to stand. The defendant ran past the victim while continuing to shoot. The defendant then turned and fired at the victim yet again as he, the defendant, ran to the car at the far end of the parking lot from which he had retrieved the gun. The defendant entered the car and fled the scene.

Police recovered 12 shell casings fired by the same weapon at the murder scene. Mr. Gregory testified that the shooting stopped when he heard what he believed to be the gun jamming. The victim suffered eight gunshot wounds. Dr. Nanduri, an assistant medical examiner, testified that the victim suffered two fatal gunshot wounds. One such fatal shot entered near the victim's backbone, traveled through the right lung causing considerable internal hemorrhaging, and left a large exit wound near the collar bone.

The evidence reasonably supports the trial court's conclusion that the defendant did not act in self-defense. The defendant acted as the initial aggressor, retrieving a gun, approaching the victim from across the parking lot, shooting the victim repeatedly, and pursuing the victim to shoot him again and again. The defendant made no effort whatsoever to avoid danger. He could have simply climbed in his friend's car and left the scene, avoiding any confrontation whatsoever. The defendant, however, testified that he wanted to confront the victim and "squash" their problems. The defendant could not have held any reasonable belief that the shooting was necessary to save himself from an immediate danger of serious bodily injury or death instigated by the victim.

There is no undisputed and uncontradicted evidence clearly establishing self-defense. The trial court did not err in denying the defendant's motions for judgment of acquittal because the evidence was sufficient to support a conclusion,

beyond a reasonable doubt, that the defendant did not act in self-defense. We deny
the defendant's second point.

(Resp. Ex. E, ECF No. 10-5 at 6-8).

Millett argues the Missouri Court of Appeals' decision was an unreasonable application of
In re Winship, 397 U.S. 358, 363-364 (1970), and Jackson v. Virginia, 443 U.S. 307, 319 (1979),
as well as an unreasonable determination of the facts in the record. He argues that in viewing the
evidence in the light most favorable to the State, no rational trier of fact could have found he was
not acting in self-defense. Petitioner contends the court of appeals made an unreasonable
determination of the facts when it found that he could have simply left the gas station parking lot
and that he did not act in self-defense in shooting the victim. He asserts that no reasonable jury
could not find that he acted in self-defense and, accordingly, this is an unreasonable application of
Jackson and Winship as the evidence was insufficient to support the convictions for first-degree
murder and armed criminal action. (ECF No. 7 at 8.)

Respondent argues that the decision of the Missouri Court of Appeals denying this claim
on the merits is reasonable and entitled to deference. Respondent states that this Court cannot
reexamine the evidence, and can overturn a state court decision rejecting a sufficiency of the
evidence challenge only if the state court decision was objectively unreasonable. Cavazos v. Smith,
565 U.S. 1, 2 (2011).

Under the Supreme Court's decision in Jackson, "evidence is sufficient to support a
conviction so long as 'after viewing the evidence in the light most favorable to the prosecution,
*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable
doubt.'" Cavazos, 565 U.S. at 7 (quoting Jackson, 443 U.S. at 319). Further, Jackson
"unambiguously instructs that a reviewing court 'faced with a record of historical facts that
supports conflicting inferences must presume—even if it does not affirmatively appear in the

record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" Id. (quoting Jackson, 443 U.S. at 326).

The "conflicting inferences" in this case were presented by Millett at his trial and were rejected by the trial court as the trier of fact. The Missouri Court of Appeals reviewed that decision on its merits and concluded the evidence adduced at trial did not support a self-defense theory and was sufficient to support that conclusion beyond reasonable doubt. This Court applies a deferential review to the state appellate court's decision. 28 U.S.C. § 2254(d); Cavazos, 565 U.S. at 7; Jackson, 443 U.S. at 326.

The Court finds that the Missouri Court of Appeals did not unreasonably apply United States Supreme Court precedent when it rejected Petitioner's sufficiency of the evidence argument, nor did it make an unreasonable determination of the facts, based on the evidence of record it discussed in reaching the conclusion that the evidence did not support the theory of self-defense, and the trial court did not err in denying Millett's motions for judgment of acquittal.

Ground One will be denied.

## 2. Ground Two – Ineffective Assistance of Trial Counsel, Waiver of Jury Trial

In Ground Two, Petitioner asserts he was denied effective assistance of counsel under the Sixth and Fourteenth Amendments of the United States Constitution when trial counsel failed to obtain Petitioner's informed consent before waiving a jury trial.

The Missouri Court of Appeals identified and discussed the law and applied it to the facts relevant to this claim on the post-conviction motion appeal. First, it reviewed the record with respect to Petitioner's waiver of his right to a jury trial:

> Prior to trial, trial counsel attested that she had spoken with Millett and explained the details of what a jury trial would entail. Further, the trial court explained to Millett the consequences of waiving a jury trial:

> COURT:     What do these charges carry in terms of [] the possibility of punishment if the defendant were to be found guilty of those charges? Let's ask the prosecutor what the penalty would be for these.
>
> STATE:     The punishment for murder in the first degree is life without the possibility of probation and parole. Armed criminal action there's a minimum of three years['] incarceration up to an infinite number of years determined by the Court or life imprisonment.
>
> COURT:     Do you understand the range of punishment possible in this trial?
>
> MILLETT:     Yes, sir.
> . . .
>
> COURT:     All right. Now, if you have a jury trial, there are twelve jurors. They would be selected during the first part of the trial in a process that questions a large number of people to decide who qualifies to be a juror. . . . Do you understand?
>
> MILLETT:     Yes, sir.
>
> COURT:     Now, after that process, then the jury trial begins. No one is allowed to make a comment about your silence if you choose not to testify. And the only way you can be convicted is if every[ ]one of the twelve jurors believes that you are guilty of what you are charged with beyond a reasonable doubt. Do you understand?
>
> MILLETT:     Yes, sir.
> . . .
> COURT:     What is your preference, Mr. Millett? I cannot advise you which way to do it. It's entirely up to you consulting with your lawyer.
>
> MILLETT:     We have talked and I would like to go with a bench trial.

The trial court subsequently found that Millett knowingly waived his right to a jury trial. The case proceeded to a bench trial.

(Resp. Ex. I, ECF No. 10-9 at 5.)

The Missouri Court of Appeals stated that its review of the motion court's denial of the Rule 29.15 motion was "limited to a determination of whether the motion court's findings of fact and conclusions of law are clearly erroneous." (Id. at 8) (citing Mo. S. Ct. Rule 29.15(k); Luster v. State, 10 S.W.3d 205, 209 (Mo. App. W.D. 2000)). It stated, "The motion court's findings are clearly erroneous only if, after a review of the entire record, 'we are left with the definite and firm impression that a mistake has been made.' Barnes v. State, 506 S.W.3d 407, 409 (Mo. App. E.D. 2016) (citing Anderson v. State, 196 S.W.3d 28, 33 (Mo. banc 2016))." Id.

The Court of Appeals then articulated the standards it applied to review of ineffective assistance of counsel claims:

> In both points, Millett raises ineffective-assistance-of-counsel claims. We review such claims following a bench trial without an evidentiary hearing under the standards set forth in Strickland and Rule 29.15. 466 U.S. at 687; Rule 29.15.

> To prove ineffective assistance of trial counsel, the movant must satisfy the two-prong skill and diligence of a reasonably competent attorney; and 2) the movant was thereby prejudiced. Strickland, 466 U.S. at 687; Barnes, 506 S.W.3d at 410. The Strickland standard contains a strong presumption that trial counsel's performance was reasonable and effective; to overcome this presumption, the movant must "point to specific acts or omissions of counsel that, in light of all the circumstances, fell outside the wide range of professional competent assistance." Zink v. State, 278 S.W.3d 170, 176 (Mo. banc 2009); see Strickland, 466 U.S. at 689. Trial strategy decisions "made after a thorough investigation of the law and the facts relevant to plausible options are virtually unchallengeable." Zink, 278 S.W.3d at 176 (internal quotations omitted). To prove the second prong of Strickland, the movant must show "a reasonable probability that, but for [trial] counsel's alleged errors, the outcome would have been different." Barnes, 506 S.W.3d at 410 (internal citation omitted). If either prong is not met, we need not consider the other, and the movant's ineffective-assistance-of-counsel claim necessarily fails. Id.

> The motion court is not required to grant an evidentiary hearing for every Rule 29.15 motion. Barnes, 506 S.W.3d at 410. "To be entitled to an evidentiary hearing, [the] movant must: (1) allege facts, not conclusions, that, if true, would warrant relief; (2) these facts must raise matters not refuted by the record and files in the case; and (3) the matters complained of must have resulted in prejudice to the movant." Id. (quoting Barnett v. State, 103 S.W.3d 765, 769 (Mo. banc 2003)).

14

(Resp. Ex. I, ECF No. 10-9 at 8-9.)

The appellate court addressed Millett's claim that his attorney did not obtained his informed consent to waive his right to a jury trial as follows:

Millett alleges that trial counsel was ineffective for failing to obtain Millett's informed consent to the waiver of his right to a jury trial. Specifically, Millett posits that trial counsel should have advised him of the option to proceed with a jury trial and waive only jury sentencing, and should have explained the difference between a sentence of over one hundred years in prison versus a sentence of life without parole.

A jury-trial waiver "must appear in the record with unmistakable clarity." State v. Baxter, 204 S.W.3d 650, 653 (Mo. banc 2006); see also U.S. Const., Amends. VI, XIV; Mo. Const., art. I, secs. 18(a), 22(a); Rule 27.01(b). An appearance of "unmistakable clarity" does not require the trial court to examine personally the defendant on the record regarding the defendant's understanding of his or her rights. Baxter, 204 S.W.3d at 653. Rather, the defendant is only required to waive his or her right to a jury trial in open court. Id. "The right to a jury trial is a fundamental right, however, and the waiver of a jury trial must be knowing, voluntary, and intelligent." Id. (internal citations omitted); Luster, 10 S.W.3d at 211.

When advising the defendant regarding his or her right to a jury trial and the consequences of waiving that right, trial counsel is not required to use specific terminology or ensure that the defendant has the same appreciation of the right to a jury trial as a member of the legal profession. Luster, 10 S.W.3d at 211 (internal citations omitted). Instead, trial counsel has "an obligation to explain the right to reasonably ensure that the [defendant] had an awareness of the meaning, incidents and benefits of a trial by jury and the implications and consequences of waiver of the right." Id. at 211-12 (internal quotations omitted).

Critically here, Millett does not posit that trial counsel did not inform him properly of his right to a jury trial. This failure weighs against a finding that Millett's waiver was not knowing, voluntary, and intelligent. Baxter, 204 S.W.3d at 654. Rather, Millett maintains trial counsel was ineffective by advising him that a judge would sentence him more leniently than a jury, and not informing him of the ability to waive only jury sentencing, such that he could have proceeded with a jury trial as to issues of guilt, and allow the judge to determine his sentence. The record clearly refutes Millett's claim.

"While there is no constitutional right to jury sentencing, Missouri provides a statutory right to jury sentencing unless (1) the defendant requests in writing, prior to voir dire, that the trial court assess punishment, or (2) the State pleads and proves the defendant is a prior or persistent offender." State v. Collins, 290 S.W.3d 736,

744 (Mo. App. E.D. 2009) (citing Section 557.0363). However, this statutory right exists only where the defendant proceeds with a jury trial. Conversely, where the defendant waives his or her right to a jury trial, "[s]uch a waiver must include a waiver of a trial by jury of all issues and offenses charged in the case, including the punishment to be assessed and imposed if the defendant is found guilty." Section 565.006.1 RSMo (2000).

Prior to trial, trial counsel assured the trial court that she had explained to Millett the details of what a jury trial would include. The trial court subsequently spoke with Millett regarding the consequences of waiving a jury trial. Specifically, the trial court explained to Millett that a jury would consist of twelve individuals, and a conviction required every one of the twelve-jury members to believe he was guilty beyond a reasonable doubt. Further, the State informed Millett of the punishment should the trial court find him guilty: life without the possibility of probation and parole for murder in the first degree and a minimum of three years for armed criminal action. Millett confirmed that he understood the range of punishment. Millett also testified that he spoke with trial counsel about his right to a jury trial and sought to waive that right.

Millett is correct that there is no discussion on the record of Millett's decision to waive jury sentencing. However, this argument does not defeat the presumption that trial counsel was effective during the pre-trial proceedings. "The decision to waive a jury trial is a matter of trial strategy and consequently does not provide a basis for post-conviction relief." Roberts v. State, 356 S.W.3d 196, 206 (Mo. App. W.D. 2011) (quoting Smith v. State, 837 S.W.2d 25, 28 (Mo. App. W.D. 1992)). Similarly, the decision to prefer court sentencing to jury sentencing is also a matter of trial strategy. See State v. Nunley, 923 S.W.2d 911, 923-24 (Mo. banc 1996) (finding trial counsel reasonably concluded court sentencing was preferential to jury sentencing and the defendant did not have a statutory right at issue). We understand "the potentially significant trial strategy decisions that would differ between jury and judge sentencing." Roberts, 356 S.W.3d at 206-07; see also Section 557.036 (providing that if the defendant desires to waive his or her right to jury sentencing, he or she must do so prior to trial). Reasonable trial strategy, no matter how the strategy appears in hindsight, "cannot serve as a basis for a claim of ineffective assistance." Ford v. State, 334 S.W.3d 679, 682 (Mo. App. S.D. 2011). Millett fails to overcome the presumption that trial counsel's decision to allow any sentence to be determined by the trial court instead of by a jury was reasonable given the video evidence of Millett shooting Victim eight times without any conversation or hesitation, Millett's own admission that he shot and killed Victim, and the lack of evidence supporting Millett's self-defense theory. See Nunley, 923 S.W.2d at 923; see also Millett, 447 S.W.3d at 713-14 (determining that Millett's claim of self-defense was not supported by the record).

Trial counsel properly advised Millett regarding his waiver of the right to a jury trial, as evidenced by his own assertions before the trial court. To the extent trial counsel advised Millett regarding potential sentencing outcomes, such advice

does not ordinarily support a claim of ineffective assistance of counsel. See Roberts, 356 S.W.3d at 206. Both trial counsel's and Millett's testimony at the pre-trial proceedings support the motion court's finding that Millett's waiver of his right to a jury trial was strategic, knowingly contemplated, and voluntary. See id. at 207. Millett additionally listened and consented to the State's anticipated sentencing ranges for the charged offenses. The State did not mention any sentencing range for murder in the first degree; the State merely stated that the sentence would be life in prison without the possibility of probation or parole should the trial court find Millett guilty. The trial court subsequently found Millett guilty, and we affirmed that conviction on appeal. We are not persuaded that trial counsel was obliged to advise Millett about the difference between a sentence of over one hundred years versus life without parole because the State clearly explained to Millett that should he be found guilty of murder, the trial court would sentence him to life without probation or parole. See Roberts, 356 S.W.3d at 206-07 (finding the trial counsel's advice to waive jury sentencing based on the jury's predicted proclivity to sentence the defendant harshly a matter of trial strategy).

The record supports the motion court's finding that Millett voluntarily and knowingly waived his right to a jury trial. See Baxter, 204 S.W.3d at 653. Because the record refutes Millett's contention, the motion court did not err in denying Millett an evidentiary hearing. See Barnes, 506 S.W.3d at 410-11. Since Millett is unable to overcome the presumption of trial counsel's reasonableness, we need not discuss any resulting prejudice. Zink, 278 S.W.3d at 176; Barnes, 506 S.W.3d at 410. Point One is denied.

(Resp. Ex. I, ECF No. 10-9 at 7-13.)

Petitioner argues the Missouri Court of Appeals' factual determination was unreasonable as it ignored the fact that Millett was not advised he could waive jury sentencing but still have a jury determine his guilt and, further, the court did not hold an evidentiary hearing to determine whether trial counsel's advice to waive a jury trial was based upon strategic reasons or because of counsel's deficient performance. Petitioner argues the court of appeals' decision was an unreasonable application of Strickland, as no reasonable lawyer would have advised him to forego a jury trial because a jury could sentence him to over 100 years in prison, when in fact he faced lifetime imprisonment without parole. Petitioner cites no case authorities in support of his arguments.

Respondent argues that the decision of the Missouri Court of Appeals denying this claim on the merits is reasonable and entitled to deference.

The Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel. Strickland, 466 U.S. at 686. The Supreme Court set forth the standard governing ineffective assistance of counsel claims in Strickland. To establish ineffective assistance, a petitioner must show that (1) his counsel's performance was deficient, or that it "fell below an objective standard of reasonableness," and also that (2) "the deficient performance prejudiced the defense." Id. at 687-88. Strickland provides a "highly deferential" standard to review ineffective assistance of counsel claims by having courts "apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." Harrington, 562 U.S. at 104 (quoting Strickland, 466 U.S. at 689).

On federal habeas review, this Court does not determine whether Petitioner's trial counsel provided effective assistance, but instead examines "whether the state court's application of the Strickland standard was unreasonable." See Harrington, 562 U.S. at 101; see also Strickland, 466 U.S. at 689 ("Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.").

The standard on federal habeas review "is different from asking whether defense counsel's performance fell below Strickland's standard." Harrington, 562 U.S. at 101. Instead, the Court must determine "whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Id. at 105. "Counsel should be 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'"

Gray v. Norman, 739 F.3d 1113, 1117 (8th Cir. 2014) (quoting Strickland, 466 U.S. at 690).
"Where a state court concludes that there was no ineffective assistance under this 'highly
deferential' standard, a federal court then must review counsel's performance under the
'deferential lens of § 2254(d).'" Id. (quoting Cullen v. Pinholster, 563 U.S. 170, 190 (2011)).

The Missouri Court of Appeals applied the correct legal standard of Strickland, 466 U.S.
668, and reviewed the record concerning Petitioner's waiver of his right to a jury trial and his trial
counsel's advice. Contrary to Petitioner's assertion, the appellate court did not ignore the fact that
Millett was not advised he could waive jury sentencing but still have a jury determine his guilt.
The court addressed this claim and found that Petitioner was advised of his right to a jury trial and
of the range of punishment he faced, and that Petitioner knowingly and intelligently waived the
right to a jury trial. In light of the record, the court concluded Petitioner failed to overcome
Strickland's presumption of effective assistance, and that trial counsel's decision to allow any
sentence to be determined by the trial court instead of by a jury was reasonable given the strength
of the evidence against Petitioner, including video of the shooting, Petitioner's admission that he
shot and killed the victim, and the lack of evidence supporting Petitioner's self-defense theory.
The court also concluded that because the record showed Petitioner voluntarily and knowingly
waived his right to a jury trial, no evidentiary hearing was required.

The Court determines that the Missouri Court of Appeals' application of the Strickland
standard to this claim of ineffective assistance of defense counsel was not unreasonable for the
reasons stated by that court. See Owens, 198 F.3d at 681; Harrington, 562 U.S. at 101.

Ground Two is denied.

3.   *Ground Three – Ineffective Assistance of Trial Counsel, Failure to Object*

In Ground Three, Petitioner asserts he was denied effective assistance of counsel under the

Sixth and Fourteenth Amendments of the United States Constitution when trial counsel failed to

object to thirteen portions of testimony during his cross-examination by the prosecutor.

The Missouri Court of Appeals identified and discussed the law and applied it to the facts

relevant to this claim on the post-conviction motion appeal.

> Millett's second claim of ineffectiveness focuses on trial counsel's scant
> objections to the State's aggressive cross-examination of him at trial. Millett
> reasons he was prejudiced by his trial counsel's scant objections because there was
> a reasonable probability that the trial court would have acquitted Millett of both
> charges had trial counsel timely objected to the State's improper questioning.
> Specifically, Millett contends that the State's improper questions began at the
> beginning of the State's cross-examination of Millett, but trial counsel objected
> only twice. Millett's argument fails because he is unable to satisfy the prejudice
> prong of the <u>Strickland</u> standard. <u>See</u> <u>Barnes</u>, 506 S.W.3d at 410.

> To prevail on an ineffective-assistance-of-counsel claim regarding the trial
> counsel's failure to object, the movant must show the failure to object resulted in a
> substantial deprivation of his or her right to a fair trial. <u>Shelton v. State</u>, 440 S.W.3d
> 464, 470 (Mo. App. E.D. 2014). We presume "in a bench trial that the trial judge
> was not confused or misled by any allegedly irrelevant or inadmissible evidence
> unless the record clearly demonstrates that the trial court considered and relied upon
> the inadmissible evidence." <u>State v. Elliott</u>, 271 S.W.3d 604, 607 (Mo. App. S.D.
> 2007) (internal citations omitted); <u>see also</u> <u>State v. Washington</u>, 512 S.W.3d 118,
> 123 (Mo. App. E.D. 2017); <u>State v. Finley</u>, 403 S.W.3d 625, 629-30 (Mo. App.
> S.D. 2012). We note that the State's cross-examination at times teetered on the edge
> of acceptability. Moreover, lawyers' statements simply are not evidence. <u>See</u>
> <u>Barton v. State</u>, 432 S.W.3d 741, 754 (Mo. banc 2014) (finding that "because the
> jury is instructed that the lawyers' arguments are not evidence, prejudice is unlikely
> to result from the failure to object to statements made in closing argument.").

> Even were we to consider the State's cross-examination of Millett to be
> overly aggressive, we presume that the trial court saw beyond the State's tone and
> verbiage, and rightfully evaluated the admitted evidence. <u>See</u> <u>Finley</u>, 403 S.W.3d
> at 629-30; <u>Elliott</u>, 271 S.W.3d at 607. Millett suggests that the trial court's act of
> stepping down from the bench to obtain a closer view of the security footage is
> evidence that the trial court acted or decided the case on other grounds. While we
> are puzzled as to how this accusation relates to a claim of ineffective assistance of
> counsel, we find Millett's characterization of the trial court's actions severely
> strained. The fact that the trial court sought to obtain a closer view of the security

footage does not suggest any prejudice to Millett. See Barnes, 506 S.W.3d at 410. Specifically, the trial court, as the fact finder in a bench trial, made an independent effort to evaluate the evidence and draw its own conclusions from the security footage after hearing conflicting testimony from Millett concerning what the footage showed.

We are not persuaded that had trial counsel timely objected to the State's questioning, the trial court would have acquitted Millett of all charges. In fact, when trial counsel did object during the State's cross-examination, the trial court overruled the objections, characterizing the State's questions as merely those of a typical cross-examination. Moreover, the trial court was presented with voluminous evidence—including Millett's own statements—that Millett knowingly and purposefully shot and killed Victim. Further, as discussed in our memorandum for Millett's direct appeal, 447 S.W.3d 713, Millett's self-defense theory was not supported by the record. Specifically, the evidence showed Millett as the initial aggressor. Millett retrieved a gun and approached Victim from across the parking lot. Millett shot Victim repeatedly and pursued Victim in order to continue shooting. Millett made no effort to avoid danger.

Millett is thus unable to show that trial counsel's failure to object to the State's cross-examination of him prejudiced him in any manner. See Shelton, 440 S.W.3d at 470. Because the record refutes Millett's contention, the motion court did not err in denying Millett an evidentiary hearing. See Barnes, 506 S.W.3d at 410. Because Millett is unable to show the requisite prejudice resulting from trial counsel's actions, we need not discuss the performance prong of Strickland. Zink, 278 S.W.3d at 176; Barnes, 506 S.W.3d at 410. Point Two is denied.

(Resp. Ex. I, ECF No. 10-9 at 13-15

Petitioner offers conclusory assertions that the Missouri courts' decisions were contrary to or involved an unreasonable application of clearly established federal constitutional law, and were based upon an unreasonable determination of the facts. Petitioner states that the Missouri Court of Appeals' factual determination is unreasonable "as it ignores the fact that Mr. Millett was prejudiced by the prosecution's questioning." (ECF No. 7 at 17.) Petitioner's circular argument does not explain how he was prejudiced; nor does Petitioner cite any case law in support of his argument.

Respondent argues that the decision of the Missouri Court of Appeals denying this claim on the merits is reasonable and entitled to deference.

The appellate court did not address the first prong of <u>Strickland</u> on this claim, but determined that Petitioner was not prejudiced by his counsel's failure to object to the prosecutor's questioning. It reasoned that in this bench-tried case, the trial court was able to properly evaluate the admitted evidence, and "saw beyond the State's tone and verbiage." In light of the strength of the evidence against Petitioner, it concluded there was no resulting prejudice.

The Court determines that the Missouri Court of Appeals' application of the <u>Strickland</u> standard to this claim of ineffective assistance of defense counsel was not unreasonable for the reasons stated by that court.  See <u>Owens</u>, 198 F.3d at 681; <u>Harrington</u>, 562 U.S. at 101.

Ground Three is denied.

C.  <u>Unexhausted Claims – Procedural Default</u>

Under the doctrine of procedural default, a federal habeas court is barred from considering the merits of a claim that was not fairly presented to the state courts, unless the petitioner shows cause for the default and prejudice resulting therefrom; or that he is actually innocent, such that a miscarriage of justice would result by failing to consider the claim. <u>Murphy v. King</u>, 652 F.3d 845, 849-50 (8th Cir. 2011). To exhaust a federal claim "the petitioner must present the same facts and legal theories to the state court that he later presents to the federal courts." <u>Stephen v. Smith</u>, 963 F.3d 795, 801 (8th Cir. 2020) (citations omitted).

"Out of respect for finality, comity, and the orderly administration of justice, federal courts may excuse procedural default only if the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law." <u>Shinn</u>, 142 S. Ct. at 1733 (citing <u>Dretke v. Haley</u>, 541 U.S. 386, 388 (2007), and <u>Coleman</u>, 501 U.S. at 750) (internal quotations omitted). To demonstrate cause, the petitioner must "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." <u>Murray v.</u>

Carrier, 477 U.S. 478, 488 (1986). To demonstrate prejudice, the petitioner must show that the claimed constitutional violation "worked to his actual and substantial disadvantage." Id. at 494. A showing that the errors at trial created a "possibility of prejudice" is not sufficient. Id. (quoting United States v. Frady, 456 U.S. 152, 170 (1982)). "If a prisoner fails to demonstrate cause, the court need not address prejudice." Cagle v. Norris, 474 F.3d 1090, 1099 (8th Cir. 2007).

With respect to the cause of default, "attorney error is an objective external factor providing cause for excusing a procedural default only if that error amounted to a deprivation of the constitutional right to counsel." Davila v. Davis, 137 S. Ct. 2058, 2065 (2017) (citations omitted). The ineffective assistance of postconviction counsel generally does not constitute cause for procedural default because there is no Sixth Amendment right to postconviction counsel. As such, there was no deprivation of a constitutional right to counsel. Dorsey v. Vandergriff, 30 F.4th 752, 755 (8th Cir. 2022) (citing Thompson, 501 U.S. at 752). The Supreme Court created a narrow exception to this rule in Martinez v. Ryan, and held that "a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective." 566 U.S. at 17.

The Martinez exception was expanded in Trevino v. Thaler, which held that it applies where state law explicitly prohibits prisoners from bringing claims of ineffective assistance of trial counsel on direct appeal, and where the "state procedural framework, by reason of its design and operation, makes it highly unlikely in a typical case that a defendant will have a meaningful opportunity to raise a claim of ineffective assistance of trial counsel on direct appeal." 569 U.S. 413, 429 (2013). Under Missouri law, a post-conviction proceeding is the exclusive procedure for

pursuing an ineffective assistance of counsel claim. <u>Moore-El v. Luebbers</u>, 446 F.3d 890, 896 (8th Cir. 2006); Mo. S. Ct. Rule 29.15(a).

A petitioner claiming ineffective assistance of postconviction counsel as the cause for his procedural default must demonstrate the following:

> (1) the claim of ineffective assistance of trial counsel was a "substantial" claim; (2) the "cause" consisted of there being "no counsel" or only "ineffective" counsel during the state collateral review proceeding; and (3) the state collateral review proceeding was the "initial" review proceeding with respect to the "ineffective-assistance-of-trial-counsel claim."

<u>Marcyniuk v. Payne</u>, 39 F.4th 988, 996 (8th Cir. 2022) (quoted case omitted), *petition for cert. filed*, (U.S. Mar. 7, 2023) (No. 22-6951).

### 1. Ground Four – Ineffective Assistance of Counsel – Failure to Object to Error on Judgment Form

In Ground Four, Petitioner asserts he was denied effective assistance of counsel under the Sixth and Fourteenth Amendments of the United States Constitution when trial counsel failed to object to the trial court's entry of judgment on his first-degree murder charge as an unclassified felony on the judgment form. Petitioner concedes this issue was not raised in state court and therefore would be procedurally barred from federal habeas review.[4] Petitioner argues he is entitled to develop and present this ground for relief on federal habeas review under <u>Martinez</u>, 566 U.S. 1, however, as he raises a substantial ground of ineffective assistance of trial counsel and postconviction counsel was ineffective in failing to properly raise it.

Respondent argues that Petitioner makes no showing the <u>Martinez</u> exception to procedural default applies to permit review of this claim, as the Petition offers no <u>Strickland</u> analysis to show

---

[4]Petitioner raised a version of this claim in his pro se post-conviction Rule 29.15 motion. (Resp. Ex. F, ECF No. 10-6 at 17.) The pro se claim alleged trial court error instead of trial counsel error. (<u>Id.</u>) Petitioner did not present either version of the claim on post-conviction appeal. As such, he defaulted the claim by not presenting it at each step of the proceedings, as he acknowledges. <u>See</u> <u>Sweet</u>, 125 F.3d at 1149.

that postconviction counsel provided ineffective assistance by failing to raise it. Further, Respondent argues the claim is without merit.

As Respondent observes, Petitioner makes no attempt to show cause and prejudice for the default under <u>Martinez</u> due to post-conviction counsel's failure to advance these claims in his Amended Rule 29.15 motion, but instead only makes a conclusory assertion of ineffective assistance of trial and post-conviction counsel. Petitioner argues for the first time in his Traverse that "because this claim was not raised in [Petitioner's] amended postconviction motion, it is as if it was never raised in the postconviction proceedings," and the Missouri Court of Appeals could not review it under any standard for that reason. (ECF No. 21 at 13, citing <u>Johnson v. State</u>, 369 S.W.3d 87, 91 (Mo. Ct. App. 2012)). Petitioner argues, "Appellate counsel could not make a strategic choice not to raise this claim on postconviction appeal because the claim could not be raised. Furthermore, this ground for relief is a substantial claim of ineffective assistance of trial counsel. Postconviction counsel was ineffective in failing to properly raise it." (<u>Id.</u>) Petitioner asserts that because the claim is "substantial, this Court does not perform a full merits review but conducts an evidentiary hearing to determine its merits." (<u>Id.</u>, citing <u>Trevino</u>, 569 U.S. at 428, <u>Sasser v. Hobbs</u>, 735 F.3d 833, 853 (8th Cir. 2013)). Petitioner cites no case law to support his assertion that the ground is substantial under <u>Martinez</u>.

The Supreme Court recently held that under 28 U.S.C. § 2254(e)(2), "a federal habeas court may not conduct an evidentiary hearing or otherwise consider evidence beyond the state-court record based on ineffective assistance of state postconviction counsel." <u>Shinn</u>, 142 S. Ct. at 1734. Instead, "a federal court may order an evidentiary hearing or otherwise expand the state-court record only if the prisoner can satisfy § 2254(e)(2)'s stringent requirements." <u>Id.</u> at 1735. Thus, while <u>Martinez</u> can excuse procedural default and permit a petitioner to raise an ineffective

assistance of trial counsel claim in federal habeas, it does not permit factual development outside the state court record to prove that claim.

Consequently, for a claim raised under <u>Martinez</u> to warrant a hearing, the petitioner must meet the standard set out in § 2254(e)(2):

> If a prisoner has "failed to develop the factual basis of a claim in State court proceedings," a federal court "shall not hold an evidentiary hearing on the claim" unless the prisoner satisfies one of two narrow exceptions, <u>see</u> 28 U.S.C. § 2254(e)(2)(A), and demonstrates that the new evidence will establish his innocence "by clear and convincing evidence," § 2254(e)(2)(B). In all but these extraordinary cases, AEDPA "bars evidentiary hearings in federal habeas proceedings initiated by state prisoners." <u>McQuiggin v. Perkins</u>, 569 U.S. 383, 395, (2013).

<u>Shinn</u>, 142 S. Ct. at 1728 (parallel citations omitted). The two "narrow exceptions" are for claims based on (i) "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable;" or (ii) "a factual predicate that could not have been previously discovered through the exercise of due diligence." § 2254(e)(2)(i), (ii).

In <u>Shinn</u>, the Supreme Court "explicitly rejects the idea that a federal court may hold an evidentiary hearing to determine whether there is cause and prejudice." <u>Marcyniuk</u>, 39 F. 4th at 999 (cleaned up). "[A] <u>Martinez</u> hearing is improper if the newly developed evidence never would entitle the prisoner to federal habeas relief." <u>Id.</u> (quoting <u>Shinn</u>, 142 S. Ct. at 1739) (cleaned up).

Petitioner makes no argument that he can satisfy the narrow requirements of § 2254(e)(2), and the Court finds he cannot do so. First, the factual predicate on which Ground Four is based could have been previously discovered through the exercise of due diligence, because it was part of the public record in the case. This is fatal to his request for an evidentiary hearing. Second, Petitioner cannot show that the facts underlying this claim are sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found him guilty of the underlying offense.

To determine whether Petitioner's procedural default is excused, the Court must determine if postconviction counsel was ineffective for failing to raise the defaulted claim. In order to demonstrate ineffective assistance of postconviction counsel as the cause for his procedural default, Petitioner must first establish that the underlying claim of ineffective assistance of trial counsel was a "substantial" claim. See Marcyniuk, 39 F.4th at 996.

"A 'substantial claim' is one with 'some merit,' and Martinez's some-merit requirement means that whether the claimant's trial counsel was ineffective must at least be debatable among jurists of reason." Marcyniuk, 39 F.4th at 996 (quoting Dorsey, 30 F.4th at 756) (cleaned up). "Thus, to demonstrate that his ineffective assistance of trial counsel claim is "substantial," [Petitioner] must show that it is at least debatable among jurists of reason whether his trial counsel's performance was deficient and whether this deficient performance prejudiced him." Id.; see Dorsey, 30 F.4th at 757; Strickland, 466 U.S. at 687.

Here, this requires Petitioner to show that, by failing to object when the trial court entered judgment on his first-degree murder conviction as an unclassified felony, trial counsel's performance fell below the constitutional standard of competence, and prejudice resulted. See Marcyniuk, 39 F.4th at 996. To establish prejudice, Petitioner "must show not merely a substantial federal claim, such that the errors at trial created a possibility of prejudice, but rather that the constitutional violation worked to his actual and substantial disadvantage." Shinn, 142 S. Ct. at 1733 (cleaned up, quoted case omitted). Thus, Petitioner must establish a reasonable probability that, but for trial counsel's failure to object to the trial court's error on the judgment form, he would not have been sentenced to life in prison but instead would have been sentenced to a lesser term not to exceed thirty years.

Petitioner states that first-degree murder is a Class A felony with a term of life imprisonment without probation or parole. § 565.020, Mo. Rev. Stat.. Petitioner's claim is that the trial court checked the wrong box on the judgment form, indicating that Petitioner's Class A first-degree murder conviction was instead a conviction for an unclassified felony. Petitioner asserts that as a result, his sentence and judgment "is unconstitutional as a unclassified felony. If [he] is to be sentenced to an unclassified felony for murder than (sic) it should not exceed his sentence of thirty years for armed criminal conduct." (ECF No. 7 at 18). Petitioner asserts that his first-degree murder conviction should be vacated and the State ordered to either resentence or release him. Petitioner cites no legal authority in support of his argument.

The Indictment charged Petitioner with "the class A felony of murder in the first degree punishable upon conviction under Section 565.020, RSMo" (Resp. Ex. B, ECF No. 10-2 at 12), and the sentence and judgment form shows that the trial court incorrectly marked the first-degree murder conviction as an "unclassified" felony instead of a Class A felony. (Id. at 28.) Under the Missouri statute, the sentence of life imprisonment without parole was the only possible punishment for a first-degree murder conviction in Petitioner's criminal case, where the State had not sought the death penalty. See Mo. Rev. Stat. § 565.020.2 (1990). The record shows that Petitioner's trial counsel, the prosecutor, and the trial judge were necessarily aware that life in prison without parole was the only available punishment once Petitioner was convicted of the charge of first-degree murder.

In preparing to announce sentence, the trial court stated, "The penalty for Count I is immutable. Is that right?" Both counsel responded in the affirmative. (Resp. Ex. A, ECF No. 10-1 at 206:4-7). The trial court then sentenced Petitioner "as to Count I, to the statutory requirement of life in prison without the possibility of parole." (Id. 207:11-12). Trial counsel cannot have

28

committed error in failing to object to the only sentence Petitioner could have received under the statute. Further, Petitioner's claim focuses not on the sentence as it was imposed, but on the preparation of the judgment form.

Petitioner's state court judgment contains a clerical error because it shows that Petitioner's first-degree murder conviction is an unclassified felony instead of a Class A felony. See State v. Williams, 18 S.W.3d 461, 469-70 (Mo. Ct. App. 2000) (where judgment entered by the trial court indicated the defendant was convicted of the class A felony of assault in the first degree, but the jury instruction submitted the charge as a class B felony, defendant was convicted by the jury of the class B felony of assault in the first degree and sentenced to fifteen years' imprisonment on the charge, within the range of punishment for a class B felony, the judgment contained a clerical error). This type of clerical error does not require reversal on direct appeal, much less federal habeas relief, but instead may be corrected by the trial court at any time under Missouri Supreme Court Rule 29.12(c). Williams, 18 S.W.3d at 470. Thus, Petitioner's Ground Four does not raise a constitutional issue.

Because Petitioner's sentence is proper and the clerical error in his judgment does not affect his substantial rights, he cannot show the prejudice necessary under Strickland. Petitioner must show that the result of the proceeding would have been different had his counsel objected to the trial court's error in checking the wrong box on the judgment to indicate the felony class of his first-degree murder conviction. Id., 466 U.S. at 694. In the sentencing context, this requires a showing that the sentence would have been lower but for counsel's error. See Glover v. United States, 531 U.S. 198, 204 (2001); United States v. Ford, 918 F.2d 1343, 1350 (8th Cir. 1990). Because Petitioner received the only possible sentence for his offense, he cannot make this showing.

For these reasons, Petitioner fails to establish that Ground Four raises a substantial claim of ineffective assistance of trial counsel. Petitioner also fails to demonstrate that he can satisfy the requirements of § 2254(e)(2). As such, he is not entitled to an evidentiary hearing on his ineffective assistance of trial counsel claim related to the judgment form.

Petitioner has not shown cause and prejudice under Martinez to excuse his procedural default of this claim. The Court will dismiss Ground Four as procedurally barred.

### 2. Ground Five – Ineffective Assistance of Counsel – Failure to Convey Plea Offer

In Ground Five, Petitioner asserts he was denied effective assistance of counsel under the Sixth and Fourteenth Amendments of the United States Constitution when trial counsel failed to inform him of the state's plea offer of fifteen years for second-degree murder. Petitioner asserts that if trial counsel had advised him of this offer, he would have accepted it and entered a plea of guilty.

Petitioner concedes this issue was not raised in state court and thus would be procedurally barred from federal habeas review. Petitioner asserts that he can overcome procedural default either through cause and prejudice, because his trial attorney's notes reflecting this offer were found in the file but were not discovered until after the time for filing an amended postconviction motion had passed, thus establishing cause; or under Martinez due to the ineffective assistance of postconviction counsel, as it is a substantial claim of ineffective assistance of counsel deserving of further review. Petitioner asserts the Court should issue the writ and vacate his convictions, or hold an evidentiary hearing to allow him to further develop this claim.

Respondent argues that Petitioner cannot overcome his procedural default. As to cause and prejudice, Respondent states that Petitioner's allegation appears to be that the factual or legal basis for the claim was not reasonably available to postconviction counsel, Coleman, 501 U.S. at 753,

but he does not provide any record to support the allegation. Respondent argues that because both trial counsel and postconviction counsel worked for the Missouri State Public Defender, the file and its contents were readily accessible (Resp. Ex. F, ECF No. 10-6 at 63-64), and Petitioner provides no reason for the Court to excuse his default. Respondent also argues that Petitioner provides no facts, law, or other analysis demonstrating that postconviction counsel violated Strickland by failing to bring this claim, and would also have to show prejudice, but only mentions Martinez in his effort to meet the applicable standard.

With respect to the merits, Respondent argues that the record refutes Petitioner's claim of an undisclosed plea offer. Respondent states that while Petitioner alleges trial counsel's notes contain a record of the alleged plea offer, he does not provide the notes—even in redacted form to remove other work product and privileged communications—for the Court to evaluate.[5] Respondent contends that the record contains a full discussion on any possible plea:

Q [The court] Do you know whether the State made an offer in any plea negotiations?

A [Millet] Yes.

Q What was the offer?

A Thirty plus.

Q For a second degree conviction of murder, is that right?

A No, only first. They never came with second degree.

THE COURT: Thirty plus?

MS. RUESS [trial counsel]: There was no formal offer, but it was discussed that the only thing the State would accept was at first life plus life; then possibly life plus some term of years. Of course that had to be on murder second because murder first is just life without.

_____

[5]As discussed more fully *infra*, Petitioner did not make trial counsel's notes part of the record until after briefing was complete in this case.

THE COURT: Right. Mr. Millett may not understand quite what we are talking about here. The murder second degree carries a slightly less burdensome sentence.

A I wasn't informed.

Q All right. Did you tell your lawyer to reject the State's offer?

A Yes.

THE COURT: Was it a true offer? Did they ever really offer it?

MS. RUESS: No.

THE COURT: All right.

(Resp. Ex. A, ECF No. 10-1 at 214-15).

Respondent states that this discussion addresses all plea negotiations that occurred and, because it immediately followed trial, the State was present and did not correct, supplement, or clarify any of defense counsel's representations regarding plea negotiations. Respondent asserts that the discussion establishes three separate bases to affirmatively refute Petitioner's claim: (1) the State never made a formal offer; (2) the State, at a minimum, would consider thirty years' imprisonment; and (3) Petitioner knew of the plea negotiations—even contradicting himself—and chose to reject the only informal offer. Respondent argues that Petitioner does not show any Strickland issue, particularly as the record conclusively shows there was no plea offer of fifteen years to disclose.

As discussed above with respect to Ground Four, a federal court's habeas review is generally limited to the pleadings and copies of the official state court record, admissible under § 2254(g). Out of respect for our system of dual sovereignty, a federal habeas court may only rarely hear a claim or consider evidence not previously presented to the state court. Shinn, 142 S. Ct. at 1730. Section 2254(e)(2) strictly limits evidentiary development in habeas corpus proceedings.

Petitioner makes no argument that he can satisfy the narrow requirements of § 2254(e)(2), and the Court finds he cannot do so. Petitioner does not contend Ground Five is based on a new, retroactive rule of constitutional law. He cannot otherwise satisfy the conditions of § 2254(e)(2) for two reasons. First, the evidence in Petitioner's Exhibit A, trial counsel's notes, could have been discovered by postconviction counsel through the exercise of due diligence. Petitioner alleges they were in his file, which was in the Missouri State Public Defender's office at all relevant times. Second, Petitioner fails to show that the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found him guilty of the underlying offense. Petitioner is therefore not entitled to a hearing. See Shinn, 142 S. Ct. at 1728.

To determine whether Petitioner's procedural default is excused, the Court must determine if Petitioner shows that postconviction counsel was ineffective for failing to raise the defaulted claim. In order to demonstrate ineffective assistance of postconviction counsel as the cause for his procedural default, Petitioner must first establish that the underlying claim of ineffective assistance of trial counsel was a "substantial" claim. See Marcyniuk, 39 F.4th at 996.

"A 'substantial claim' is one with 'some merit,' and Martinez's some-merit requirement means that whether the claimant's trial counsel was ineffective must at least be debatable among jurists of reason." Marcyniuk, 39 F.4th at 996 (quoting Dorsey, 30 F.4th at 756) (cleaned up). "Thus, to demonstrate that his ineffective assistance of trial counsel claim is "substantial," [Petitioner] must show that it is at least debatable among jurists of reason whether his trial counsel's performance was deficient and whether this deficient performance prejudiced him." Id.; see Dorsey, 30 F.4th at 757; Strickland, 466 U.S. at 687.

Here,  this requires Petitioner to show that trial counsel was ineffective for failing to inform him of the State's offer of a fifteen-year sentence on a second-degree murder charge, and that prejudice resulted. See Marcyniuk, 39 F.4th at 996. To establish prejudice, Petitioner "must show not merely a substantial federal claim, such that the errors at trial created a possibility of prejudice, but rather that the constitutional violation worked to his actual and substantial disadvantage." Shinn, 142 S. Ct. at 1733 (cleaned up, quoted case omitted). Thus, Petitioner must establish a reasonable probability that, but for trial counsel's failure to inform him of the State's offer, he would not have gone to trial but instead would have accepted the offer and been sentenced to a term of fifteen years on a second-degree murder charge instead of life in prison.

"The Sixth Amendment right to effective assistance of counsel includes representation during the plea bargaining process." Mayfield v. United States, 955 F.3d 707, 711 (8th Cir. 2020) (citing Missouri v. Frye, 566 U.S. 134, 143-47 (2012)). "[T]he negotiation of a plea bargain is a critical phase of litigation for purposes of the Sixth Amendment right to effective assistance of counsel." Id. (quoting Padilla v. Kentucky, 559 U.S. 356, 373 (2010)). "If a plea bargain has been offered, a defendant has the right to effective assistance of counsel in considering whether to accept it." Id. (quoting Lafler v. Cooper, 566 U.S. 156, 168 (2012)). "[A]s a general rule, defense counsel has the duty to communicate *formal* offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." Frye, 566 U.S. at 145 (emphasis added). Where "defense counsel allowed a *formal* plea offer to expire without advising the defendant or allowing him to consider it, defense counsel did not render the effective assistance the Constitution requires." Id. (emphasis added).

"To show prejudice from ineffective assistance of counsel where a plea offer has lapsed or been rejected because of counsel's deficient performance, defendants must demonstrate a

reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel." Id. at 147. "Defendants must also demonstrate a reasonable probability the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it, if they had the authority to exercise that discretion under state law." Id. "To establish prejudice in this instance, it is necessary to show a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time." Id.

Under Frye and Lafler, Petitioner bears the burden of alleging the existence of a formal plea offer from the State and demonstrating a reasonable probability he would have accepted the offer if counsel had not breached a duty. See Frye, 566 U.S. at 146-47; Lafler, 566 U.S. at 164; Allen v. United States, 854 F.3d 428, 432 (8th Cir. 2017) (citing Frye and Lafler).

To support this ground, Petitioner makes only a conclusory assertion that defense counsel's notes contradict the record discussion of the plea offer. Petitioner states, "Because defense counsel's notes regarding a fifteen-year plea offer exist, . . . this claim is not refuted by the record." (ECF No. 21 at 21).[6] Petitioner then asserts that this is a substantial claim of ineffective assistance.

Petitioner does not quote from or specifically identify the portion(s) of the notes that he contends indicate the State made a plea offer of fifteen years on a second-degree murder charge in his case. The handwritten notes are cryptic, undated, and unsigned, and Petitioner does not offer any supporting discussion, explanation, or affidavits. The notes do not include identifying

---

[6]Petitioner did not make trial counsel's notes part of the record until after briefing was completed. Petitioner filed a Supplement (ECF No. 22) the day after he filed the Traverse, with one page of notes attached to the Supplement marked as Exhibit A (ECF No. 22-1). Consequently, Respondent did not have an opportunity to review the factual basis of this ground at the time he filed a response to the Court's Order to Show Cause, and the Court does not have the benefit of Respondent's observations about the notes.

information such as Petitioner's name or case number, trial counsel's name, or the prosecutor's name.

From the Court's independent review of the notes, Petitioner's Exhibit A, the number "15" appears in two places on the single sheet of lined paper, both times inside rectangular boxes that have been drawn around the numbers' location.[7] Neither of the numbers appears as part of a sentence. The first instance the number fifteen appears on the notes reads, "V/M=15." The second instance reads, "offer $M^2$ 15." (ECF No. 22-1). One or both of these notations presumably form the basis for Petitioner's claim in Ground Five.

Exhibit A also include questions and answers: "Why did take gun?" [answer illegible], and "Why be over there?"– "K styd or there" and "didn't know J styed right behind Red & S." The notes also various notations: "Bring Gregory PR," Bring V/MS;" "no gun lock ups," "steal o/ county: look in Case.net," "MIL - drug dealer," "MS State- after ask for lawyer," "let jizzle up & past in," "so fun," and "got here 2:05." Exhibit A also include doodles: a number of drawings of women's faces and eyes, among other things.

After review of the record, the Court finds that Petitioner cannot establish either the deficient performance prong or the prejudice prong of <u>Strickland</u>, because the record conclusively refutes Petitioner's claim that his attorney never told him about a plea offer of fifteen years on a second-degree murder charge. The record shows that the State did not make a formal or "true" plea offer in Petitioner's case at all, but instead engaged in informal plea discussions; that according to Petitioner, the State, at a minimum, would consider "thirty years plus" imprisonment but never offered Petitioner a plea to a murder second-degree charge; and that Petitioner knew of the plea negotiations and chose to reject the only informal offer that was made. (Resp. Ex. A, ECF

_____

[7]There is no indication in the record who drew the rectangular boxes on Petitioner's Exhibit A or when these were drawn.

No. 10-1 at 214:15-215:13). Petitioner informed the trial court after he was found guilty that it was his decision to go to trial and that he was aware the sentence, if he was convicted, would be life without probation or parole. (Id., 215:21-25).

Trial counsel's notes are not sufficient to meet Petitioner's burden to establish that "defense counsel allowed a formal plea offer to expire without advising the defendant or allowing him to consider it." Frye, 566 U.S. at 145. As such, Petitioner does not establish that defense counsel failed to render effective assistance with respect to a plea offer, that postconviction counsel was ineffective in failing to raise this issue, or that he was prejudiced as a result.

For these reasons, Petitioner fails to establish that Ground Five raises a substantial claim of ineffective assistance of trial counsel. Petitioner also fails to demonstrate that he can satisfy the requirements of § 2254(e)(2). As such, he is not entitled to an evidentiary hearing on his ineffective assistance of trial counsel claim related to the plea offer.

Petitioner has not shown cause and prejudice under Martinez to excuse his procedural default of this claim. The Court will dismiss Ground Five as procedurally barred.

## Conclusion

For the foregoing reasons, the Court concludes that Grounds One, Two, and Three in Petitioner Terronn Millett's Amended Petition for Writ of Habeas Corpus fail on the merits, and Grounds Four and Five are procedurally barred and must be denied on that basis.

Accordingly,

**IT IS HEREBY ORDERED** that Petitioner Terronn Millett's Petition and Amended Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (ECF Nos. 1, 7) are **DENIED**.

**IT IS FURTHER ORDERED** that Petitioner Millett has not made a substantial showing of a denial of a constitutional right, and this Court will not issue a Certificate of Appealability.

**IT IS FURTHER ORDERED** that Richard Adams's name will be substituted as the named Respondent in this action pursuant to Rule 25(d), Fed. R. Civ. P., and the Clerk shall modify the docket sheet and short title appropriately.

A separate Judgment in accordance with this Memorandum and Order will be filed herewith.

**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**

Dated this 18th day of April, 2023.